# SUPREME JUDICIAL COURT

FOR THE

## COUNTY OF PLYMOUTH, OCTOBER TERM 1871, AT PLYMOUTH.

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr., ⎫
Hon. SETH AMES, ⎬ Justices.
Hon. MARCUS MORTON, ⎭

---

### James H. Look *vs.* David Dean.
### Same *vs.* George C. S. Choate.

The mere fact that a man is insane does not authorize his arrest and confinement without a warrant, if he is not dangerous to himself or others.

On the trial of an action against an officer for arresting the plaintiff without a warrant, upon the mere ground that he was insane though not dangerous, it is immaterial that the defendant was acting under a superior officer, or what the defendant's opinion was of the plaintiff's sanity or insanity, or whether the plaintiff was afterwards put into a lunatic hospital by another officer.

THE FIRST CASE was an action of tort for unlawfully arresting and imprisoning the defendant, on two distinct occasions. The answer denied all the allegations of the plaintiff, and continued as follows : " And the defendant says that he is and was a deputy of the constable of the Commonwealth, and in the performance of his official duty as such was in attendance upon the camp-meeting held for religious purposes at Martha's Vineyard, in the

county of Dukes County ; that the plaintiff was present at said camp-meeting, and while said meeting was holding, and in the immediate vicinity thereof, engaged in loud and boisterous talk, and made great outcries, and conducted himself in a wild and disorderly manner, gathering about him a great crowd of people, and disturbing the peace and disturbing the meeting ; that the defendant saw him making such disturbance, and requested him to desist therefrom and to conduct himself in a more quiet and orderly manner, and prevailed upon him, by his requests, to cease making such disturbance, and went with him to a cottage on the premises, and left him there ; that in doing so the defendant had no malicious feeling towards the plaintiff, and no desire or intention of restraining him of his liberty ; and that, if any act of his in so doing amounted to an arrest or imprisonment, he did the same by virtue of his authority as a deputy constable as aforesaid, and in order to suppress said disturbance of the peace and of said meeting, and he restrained the plaintiff of his liberty only so long as was necessary to suppress said disturbance, which the plaintiff was then and there making.

" And the defendant further says that the plaintiff at the time and place aforesaid was insane, and incapable of taking care of himself, and was conducting himself in a wild and irrational manner, and the defendant prevailed upon him to cease from such disorderly conduct and to retire to a place of quiet ; and if in so doing he in any manner restrained the plaintiff of his liberty, he did so without malice towards the plaintiff, and because the plaintiff, by reason of his insanity, was incapable of taking care of himself ; and the defendant did only what was, as he believed, for the welfare and safety of the plaintiff."

Trial and verdict for the plaintiff in the superior court, before *Wilkinson,* J., who allowed a bill of exceptions of which the following is the material part :

" It appeared in evidence that the defendant was a deputy of the constable of the Commonwealth, and, acting as such, was present, with other deputies, at or near a Methodist camp-meeting on Martha's Vineyard in August 1869, being assigned more particularly to duty immediately outside the camp-ground, upon

Oak Bluffs, a settlement occupied by summer residents; and that the plaintiff, with the intention of attending said camp-meeting, went from Hyannis on August 19, in a steamboat, and landed the same day at Oak Bluffs' Landing, from a quarter to a half mile from the camp-grounds, that being the usual landing for persons going to the camp-meeting.

"The plaintiff, in support of his first count, offered evidence tending to show that, about half an hour after his arrival, and while he was at Oak Bluffs, about quarter of a mile from the camp-ground, and while he was engaged in reading from his Bible, and talking to a collection of people about him, he was arrested by the defendant, and taken to the headquarters of the state police within the camp-ground, and left within that building. And in support of his second count the plaintiff offered other evidence tending to show that while he was on the steamboat, the next morning, returning to Oak Bluffs from New Bedford, whither he had gone the previous evening, he was again arrested by the defendant, who was also on the boat, and was kept imprisoned till the arrival of the boat, when he was taken to a lock-up on the camp-ground, and there kept during that day. The plaintiff also testified that he repeatedly demanded to know why he was arrested, and to be taken before a magistrate, and to see the complaint against him, if he was charged with any offence; but that no cause was shown or made known to him.

"The defendant then offered evidence of the acts and sayings of the plaintiff while at a camp-meeting at Yarmouth on the two days previous to the first alleged arrest, for the purpose of proving his insanity, and that he was a monomaniac; and also of his acts and sayings on the Sunday previous, while having a will executed, for the purpose of proving his insanity; but the judge rejected all this evidence.

"The defendant requested the judge to rule that, if the plaintiff was insane, and the defendant, honestly believing that the welfare of the plaintiff demanded that he should go from the crowd, to which he was talking, to a place of quiet near by, took him forcibly to such place, using no more force than was necessary for the purpose, and acting from no other motive than a desire to

assist and protect the plaintiff, such act would not be an assault, nor an unlawful arrest or imprisonment. The judge declined to give this instruction; but instructed the jury that, if the plaintiff was insane, the officer had a right to arrest him, but it would in such case be his duty immediately to take proper steps to have him committed to a lunatic hospital, and if he failed to do so he would be liable from the beginning for the arrest.

" The defendant was asked by his counsel, for the purpose of justifying his acts towards the plaintiff, if in his transactions with the plaintiff he was acting under the direction of any superior officer, and if so, of whom. But this evidence was held inadmissible for that purpose. He was also asked by his counsel, for the purpose of justifying or excusing his acts towards the plaintiff, whether at the time of the alleged arrests the mind of the plaintiff was, in his opinion, in a normal or abnormal condition, and whether the plaintiff was sane or insane. But the judge ruled that this evidence was not admissible for that purpose. The defendant also offered to prove that the plaintiff was actually committed by another state constable to the state lunatic hospital at Taunton on August 21 following. But the judge refused to admit the evidence, unless the defendant could show that the plaintiff was lawfully so committed."

*J. Brown*, for the defendant. An insane person may lawfully be arrested and restrained of his liberty. *In re Oakes*, 8 Law Reporter, 122. Evidence of the unsoundness of his mind immediately before and afterwards is admissible to prove its derangement at the time of the arrest. 2 Greenl. Ev. § 690. *Dickinson* v. *Barber*, 9 Mass. 225. *Peaslee* v. *Robbins*, 3 Met. 164. The officer's opinion of the plaintiff's state of mind was admissible to show his own intent in making the arrest; or at least in mitigation of damages. *Commonwealth* v. *Presby*, 14 Gray, 65, 67. It was discretionary with the officer, after making the arrest, whether to commit the plaintiff to a hospital. If his failure to do so rendered him liable, he should have been allowed to prove that he was acting under the direction of an official superior; for that fact was at all events admissible to mitigate damages.

*G. Marston & C. W. Clifford*, for the plaintiff.

CHAPMAN, C. J.   The question which this case presents arises upon the defendant's request for instructions, and the instructions that were actually given.   The defendant asked the court to rule that if the plaintiff was insane, and the defendant, honestly relieving that the welfare of the plaintiff demanded that he should go from the crowd, to which he was talking, to a place of quiet near by, took him forcibly to such place, using no more force than was necessary for the purpose, and acting from no other motive than a desire to assist and protect the plaintiff, such act would not be an assault nor an unlawful arrest or imprisonment.   The court declined to give this instruction, but instructed the jury that, if the plaintiff was insane, the officer had a right to arrest him, but it would in such case be his duty immediately to take proper steps to have him committed to a lunatic hospital, and if he failed to do so he would be liable from the beginning for the arrest.

Both the request and the instructions assume that he was neither dangerously insane, nor disturbing the peace, but was merely insane.   The defendant was a deputy of the state constable, but his office gave him no authority over the plaintiff.   He had only such authority as any private person would have.   The right which every citizen has to enjoy personal liberty is necessarily subject to some exceptions.   Most of these exceptions are enumerated in *Colby* v. *Jackson*, 12 N. H. 526, and the authorities there cited.   Among them, are the right to restrain a person who is fighting, or doing mischief, or disturbing a congregation, or has fallen in a fit, or is so sick as to be helpless, or is unconsciously going into great danger, or is drunk, or has delirium tremens, or is so insane as to be dangerous to himself or others.   In such cases, the right to restrain persons has its foundation in a reasonable necessity, and ceases with the necessity.   As to insane persons who are not dangerous, they are not liable to be thus arrested or restrained by strangers.   Bac. Ab. Trespass, D.   *Anderdon* v. *Burrows*, 4 C. & P. 210.   *Scott* v. *Wakem*, 3 Fost. & Finl. 328. *Fletcher* v. *Fletcher*, 28 L. J. N. S. (Q. B.) 134.   *In re Oakes*, 8 Law Reporter, 122.   There is no reason why they should be thus liable ; for it is well known that many persons who are in-

sane, and especially monomaniacs, are as harmless as any other persons, and are not deemed proper subjects for treatment in a hospital. The request for instructions was properly refused.

We need not in this case discuss the question whether the defendant would have had the right, as stated in the instructions given, to take up the plaintiff, he not being a dangerous person, provided he had taken the proper steps to have him committed to a lunatic hospital; for he took no such steps. There was no legal justification for the acts of the defendant.

It is elementary law that one who would justify himself under a statute must pursue the statute. The question put to the defendant as a witness, by his counsel, whether he was acting under the direction of any superior officer, was properly ruled to be inadmissible, because he did not proceed under the statutes, but merely held the plaintiff for a while, and then released him. A superior officer could not authorize this course.

The question whether in his opinion the mind of the plaintiff, at the time of the arrest, was in a normal or abnormal condition, and whether the plaintiff was sane or insane, was also inadmissible, because the fact itself was immaterial, it not being pretended that the defendant was acting under the statutes.

The subsequent commitment of the plaintiff to the hospital by another constable was a separate matter, and could not have justified the defendant, even if it had been legal.

*Exceptions overruled.*

THE SECOND CASE was an action of tort brought in this court by the same plaintiff against the superintendent of the Taunton Lunatic Hospital for unlawfully confining the plaintiff there during two days. The answer, besides a general denial, set up facts to justify the confinement, to which the plaintiff demurred, and which are stated in the opinion; and the case was thereupon reserved by the chief justice for the determination of the full court, to stand for trial if the demurrer should be sustained, otherwise the defendant to have judgment.

*G. Marston & C. W. Clifford*, for the plaintiff.

*E. H. Bennett*, for the defendant.

CHAPMAN, C. J.   The defendant was superintendent of the insane hospital at Taunton, and had authority to receive all persons who were legally brought as patients to that institution. The plaintiff was brought there on Saturday, August 21, 1869, by Robert Crossman, a deputy state constable, on a complaint made by Crossman, and directed to the judge of probate for the county of Bristol, on the day previous, stating that the plaintiff was an insane person and a proper subject for treatment and custody in a state lunatic hospital.   One of the selectmen of Rochester, the place of the plaintiff's residence, had in writing acknowledged notice of the complaint and application ; and two physicians had signed and sworn to a certificate that within one week previous to the date of the complaint they had made a personal examination of the plaintiff, and after due inquiry and personal examination they were satisfied that he was a fit subject for remedial treatment at the hospital.   But it omitted to state that he was insane, and thus failed to be such a certificate as is required by the Sts. of 1862, *c.* 223, §§ 3, 8, and 1865, *c.* 268, § 1.   The officer took these papers with him to the hospital, but had no warrant.   The excuse offered is, that the judge of probate for Bristol, and also the judge of probate for Plymouth, were both absent from the counties, and no warrant could then be obtained.   Crossman desired to leave the plaintiff at the hospital until the following Monday, for the purpose and with the intention to procure the other papers usual in such cases.   The assistant superintendent received the plaintiff, believing him to be a fit subject for hospital treatment, and kept him confined till Monday, August 23, when his friends came and took him away.   He was within the meaning of the law an insane person, and a proper subject for treatment in the hospital, though not dangerous to himself or the community.

The truth of these statements is admitted by the demurrer. The notice issued by the judge of probate on August 28 is immaterial, for it could not have any application to the imprisonment complained of.

We look in vain in the statutes for any authority in Crossman to take the plaintiff to the hospital, or to arrest him, without a

warrant, even though his purpose was to detain him till he could carry him before the judge of probate, and procure a warrant, as soon as the judge should return home, the plaintiff not being dangerous either to himself or others. The statutes give no authority to arrest harmless persons without a warrant, even for the purpose of bringing them before the judge of probate. And were it otherwise, the officer has abandoned all proceedings under the statutes. Being a mere stranger to the plaintiff, and abandoning the arrest without making any return, he had not even the rights that a relative or friend would have. He brought the plaintiff to the hospital tortiously, and no authority could be derived from him for the plaintiff's detention. As the plaintiff was not detained by virtue of the statutes, or by any power derived from the common law, all persons concerned in the detention are wrongdoers.

The kindness with which the plaintiff was treated, and the good motives which dictated his detention, should affect the question of damages, but cannot affect his legal right to his personal liberty. He has a right of action against any and all persons who have been concerned in depriving him of it without legal authority. Though the defendant was absent when the plaintiff was brought to the hospital, yet the plea does not state that he was not afterwards present and consenting to the detention till Monday, when the plaintiff's friends came and took him away.