## CLEMENT DUBOIS, petitioner.

Bristol.   May 5, 1954. — July 7, 1954.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Defective Delinquent.   Constitutional Law*, Due process of law.   *Words*, "Mentally defective," "Dangerous."

St. 1953, c. 645, is not a criminal or penal statute. [578]

St. 1953, c. 645, providing certain procedures respecting one "mentally defective" who "has shown himself to be dangerous or shows a tendency toward becoming such" which "is or may become a menace to the public" is not unconstitutional on the ground that it does not furnish a sufficiently definite standard for the determination of the persons affected thereby. [580]

PETITION, filed in the Superior Court on September 21, 1953, for a writ of habeas corpus.

The case was reported by *Smith, J.*

*James S. Seligman*, (*Benjamin A. Friedman* with him,) for the petitioner.

*Maurice M. Lyons*, District Attorney, for the respondent, submitted a brief.

WILLIAMS, J.   This is a petition for a writ of habeas corpus against the superintendent of the State farm at

Bridgewater by a person who has been committed for observation to the defective delinquent department of that institution under St. 1953, c. 645. That statute provides, so far as is here material, that where it has been judicially determined that a commitment to a defective delinquent department has been "procedurally improper" the person held under such commitment shall be newly committed for stated periods of observation. If found not to be mentally defective he shall be returned to the court for further order consistent with the previous determination. If found to be mentally defective notice shall be given him, and if he is under the age of seventeen, notice shall also be given to his parents or nearest relative that a hearing is to be held for his commitment to a defective delinquent department. "If, after a hearing and examination of the person's record, character and personality, the court finds that such person has shown himself to be dangerous or shows a tendency toward becoming such, that such tendency is or may become a menace to the public and that such person is not a proper subject for the school for the feeble-minded or commitment as an insane person, the court shall make a report of the finding to the effect that the person is a defective delinquent and may commit him to a department for defective delinquents . . . as provided in . . . section one hundred and thirteen [of G. L. (Ter. Ed.) c. 123], and all of the applicable provisions of said section relating to the procedure governing the commitment of defective delinquents shall apply. If a person so requests, an issue or issues shall be framed and submitted to a jury."

It appeared at a hearing of the petition by a judge of the Superior Court that the petitioner was committed as a defective delinquent in 1949 after pleading guilty to a charge of burglary; that his commitment was later determined to have been "procedurally improper"; and that he was "newly committed" for observation under St. 1953, c. 645. The petitioner requested the following rulings: "1. Chapter 645 of the Acts and Resolves of Massachusetts of 1953 is unconstitutional because it furnishes an undefined, vague

and uncertain standard over what constitutes a 'mentally defective' contrary to the due process clause of § 1 of the Fourteenth Amendment to the Constitution of the United States and to art. 12 of the Declaration of Rights of the Constitution of this Commonwealth. 2. Chapter 645 of the Acts and Resolves of Massachusetts of 1953 is unconstitutional because it furnishes an undefined standard over the terms 'shown himself to be dangerous or shows a tendency to become such, that such tendency is or may become a menace to the public' contrary to the due process clause of § 1 of the Fourteenth Amendment to the Constitution of the United States and to art. 12 of the Declaration of Rights of the Constitution of this Commonwealth. 3. Chapter 645 of the Acts and Resolves of Massachusetts of 1953 is unconstitutional because delinquency implies an offence or crime and the confinement as provided thereby of a person not convicted or even arraigned or arrested for a crime is contrary to the due process clause of § 1 of the Fourteenth Amendment to the Constitution of the United States and to art. 12 of the Declaration of Rights of the Constitution of this Commonwealth. 4. Chapter 645 of the Acts and Resolves of Massachusetts of 1953 is unconstitutional because it is so indefinite, vague and uncertain as not to enable petitioner to know what constitutes a 'mental defective' and what constitutes one as 'dangerous' or having a 'tendency to become such, that such tendency is or may become a menace to the public' and therefore amounts to a delegation by the Legislature of legislative powers to courts and juries to determine the meaning of said provisions contrary to art. 30 of the Declaration of Rights of the Constitution of this Commonwealth."

The judge did not pass upon these requests but in the following terms reported to this court the questions of law thereby raised: "If the statute is constitutional as drawn, and the definition 'mental defective' means merely someone below general normal intelligence, I find that the petitioner is mentally defective, and if mere potentiality for criminality

is sufficient to classify the petitioner as dangerous or likely to become such, or a menace, I find that the past history, mentality, the associations and environment of the petitioner, are such that he might engage in some criminal activity. I have remanded the petitioner to the custody of the department of defective delinquents. Being of the opinion that the questions involved ought to be determined by the full court before any further proceedings, I report the case for that purpose, having stayed all further proceedings except such as are necessary to preserve the rights of the parties."

The enactment of St. 1953, c. 645, followed decisions of this court in *O'Leary, petitioner*, 325 Mass. 179, and *Tardiff, petitioner*, 328 Mass. 265, wherein it was determined that the commitments of the respective petitioners to a defective delinquent department under the provisions of G. L. (Ter. Ed.) c. 123, § 113, were illegal because of failure of the committing tribunal to conform to important procedural requirements of that section. Since these decisions were reported many other commitments have been invalidated by the courts for similar reasons. The present act was passed as an emergency measure for the purpose as stated in its preamble "to provide for the immediate observation, examination and recommitment of certain persons who may be mentally defective and a menace to the public." Its obvious intent is to prevent the immediate discharge of such persons from custody and supervision because of technical fault in their commitment as defective delinquents until from further observation it can be determined that they are not mentally defective and potentially dangerous.

In no sense is it a criminal or penal statute. It does not purport to define a crime and it imposes no penalty. Commitment under its provisions is not in the nature of punishment. *People* v. *Superintendent of Bellevue & Allied Hospitals of New York*, 235 N. Y. 398, 401. *County of Black Hawk* v. *Springer*, 58 Iowa, 417, 418. See *Sylvester* v. *Commonwealth*, 253 Mass. 244, 247. The general power of the Legislature, in its capacity as parens patriae, to make

suitable provision for incompetent persons who are unable to take care of themselves cannot be controverted. *Look* v. *Dean*, 108 Mass. 116, 120. *Dowdell, petitioner*, 169 Mass. 387, 389. *State* v. *Fabisinski*, 111 Fla. 454, 464–465. A comprehensive system for their care and custody has been developed through the enactment at different times of statutes now collected in c. 123 of the General Laws which is entitled "Commitment and care of the insane and other mental defectives." The earlier laws providing only for the insane and feeble minded have been supplemented by statutes relating to the care of epileptics and persons addicted to the intemperate use of narcotics or stimulants. Persons termed defective delinquents became the subject of legislative attention in 1911. By St. 1911, c. 595, provision was made for the commitment of such persons to defective delinquent departments, thereby to be established. This statute as amended became § 113 of c. 123 of the General Laws. Section 113 as it appeared in 1949, when the petitioner was originally committed, provided for the commitment of mentally defective persons if found to be habitually delinquent or to show tendencies toward becoming such and if "such delinquency is or may become a menace to the public."[1] The statute we are now considering provides for the new commitment of persons previously committed under § 113 if after further observation and examination they are found to be mentally defective and also dangerous or show a tendency toward becoming such and such tendency is or may become a menace to the public.

The report before us presents no issue relating to the validity of the petitioner's original commitment under § 113 but only the question whether he can be held and newly committed under the provisions of the more recent statute.

From the description of the persons to whom it is intended to relate we think that they comprise a class over which the Legislature has not only the right but the duty to exercise

---

[1] Compare § 113 as later revised by St. 1952, c. 608, § 1.

supervision. *Dowdell, petitioner*, 169 Mass. 387, 389. *Matter of Colah*, 3 Daly (N. Y.) 529, 535–537. *Sporza* v. *German Savings Bank*, 192 N. Y. 8, 14–15. *State* v. *Ikey's Estate*, 84 Vt. 363, 366–367. *Yeomans* v. *Williams*, 117 Ga. 800, 801. *State* v. *Fabisinski*, 111 Fla. 454, 465. They are described in language readily to be understood by those empowered to administer the act. The words "mentally defective," in the absence of indication that they are used other than in their ordinary sense (G. L. [Ter. Ed.] c. 4, § 6; *Chapin* v. *Lowell*, 194 Mass. 486, 488), describe persons whose mentality is less than normal. We find the words "mental defectives" in the title to c. 123 and the words "mentally defective" in the original defective delinquent statute. See *Commissioner of Correction, petitioner*, 324 Mass. 535, 539–540. Their meaning, so far as we are aware, has never been questioned. If used without restriction they would serve to describe all persons of deficient mentality whether the deficiency be great or small. The statute, however, provides a specific qualification. It states that, to justify the commitment of the person mentally defective, he must either be dangerous or show a tendency to become such, of such character that it is or may be a menace to the public. We think that this provision relieves the statute from any just claim that the class of persons made subject to commitment is too vague and indefinite.

The term "dangerous" is commonly understood, when applied to a person, as meaning one likely to cause or create danger. See *Commonwealth* v. *M'Neill*, 19 Pick. 127, 140–141. The danger may be either to the person himself or to others. See *Look* v. *Dean*, 108 Mass. 116, 120. Danger according to dictionary definition is the exposure or liability to injury, loss, pain, or other evil. See G. L. (Ter. Ed.) c. 123A, § 1, inserted by St. 1947, c. 683.

It cannot be said that in providing for the commitment of mentally defective persons who are dangerous or may become so the Legislature has failed to establish a reasonable and practical standard for the guidance of the courts. Although the principal contention of the petitioner as to

the unconstitutionality of the statute relates to the alleged lack of a definite standard, it may be noted that the essential elements of due process are satisfied by the provisions for notice and opportunity to be heard. See *O'Leary, petitioner*, 325 Mass. 179, 182. In our opinion none of the petitioner's requested rulings could properly have been granted. The case is remanded to the Superior Court for further hearing.

*So ordered.*