ARTHUR CHOUINARD, petitioner.

Plymouth. December 10, 1970. — March 4, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Defective Delinquent. Constitutional Law,* Due process of law, Equal protection of laws, Defective delinquent. *Words,* "Mentally defective," "Dangerous."

G. L. c. 123, § 113, as amended through St. 1954, c. 685, § 1, does not require that one charged with a crime be found guilty thereof before he may be committed as a defective delinquent. [782]

There was no merit in contentions in a habeas corpus proceeding that G. L. c. 123, § 113, as amended through St. 1954, c. 685, § 1, permitting one charged with a crime to be committed as a defective delinquent

without a prior finding of guilt of the crime charged, but after a notice and a hearing and a court finding that he has "shown himself to be dangerous or shows a tendency toward becoming such, [and] that such tendency is or may become a menace to the public," is unconstitutional by reason of vagueness of the standards for commitment, that commitment smacks of "preventive detention," or that one committed under the statute is denied the equal protection of the laws. [783–786]

PETITION for a writ of habeas corpus filed in the Superior Court on July 15, 1969.

The case was reported by *Hale*, J., without decision.

*Reuben Goodman* (*Owen S. Walker* with him) for the petitioner.

*John F. McGarry*, Deputy Assistant Attorney General (*Walter H. Mayo, III*, Assistant Attorney General, with him), for the respondent.

TAURO, C.J. This petition for a writ of habeas corpus brought in the Superior Court was reported to this court upon the pleadings and a case stated. The petitioner is an inmate of the defective delinquent department of the Massachusetts Correctional Institution, Bridgewater. The facts of the case, as set forth in the case stated, are substantially as follows:

In January, 1965, the petitioner was indicted in Hampden County for the crime of assault and battery. On the basis of the charge, the Commonwealth filed a motion for his commitment to the defective delinquent department at Bridgewater under G. L. c. 123, § 113, as amended through St. 1954, c. 685, § 1. The petitioner was examined by two psychiatrists who filed a written report with the clerk of the Superior Court that the petitioner was mentally defective. After due notice, a hearing, at which the petitioner was represented by counsel, was held on the motion in the Superior Court. After the hearing the judge found that the petitioner was mentally defective, that he had shown himself to be dangerous or showed a tendency toward becoming such, that such tendency was or might become a menace to the public, that he was not a proper subject for a school for the feeble minded or commitment as an insane person, and that he was a defective delinquent in accordance with G. L.

c. 123, § 113. The judge then committed the petitioner to the defective delinquent department at Bridgewater, where he remains pursuant to that court order. The petitioner was never tried on the assault and battery indictment, and there was no other criminal charge pending against him at the time of his commitment.

1. The petitioner contends that G. L. c. 123, § 113, requires a finding of guilty of the crime charged as a basis for the commitment of a defective delinquent. Section 113 provides, in part, "*At any time prior to the final disposition of a case* in which a defendant over the age of fifteen is *charged with a crime*, other than murder, the commission of which creates a danger to life or limb, a district attorney may file an application for the commitment of such offender to a department for defective delinquents . . ." (emphasis supplied). The relevant language of the statute is clearly contrary to the petitioner's argument. Nothing in the statute requires that a defendant must be convicted of the crime charged before he may be committed as a defective delinquent. Moreover, this court has stated that § 113 applies to "persons accused of certain specified crimes who after a full hearing are found to be defective delinquents under a statutory definition that does not involve a finding of guilt of any crime." *Commonwealth* v. *Bigwood*, 334 Mass. 46, 50. The petitioner cites legislative history in support of his position; but, the general rule of statutory construction is that a statute that is not ambiguous cannot be interpreted by resort to legislative history. "The plain meaning of a statute cannot be affected by resort to proceedings incident to its passage. Light may be sought from that source only to illumine statutory language of doubtful import. Other information than that afforded by the words of the statute can be examined only to aid in the solution of an ambiguity." *Allen* v. *Commissioner of Corps. & Taxn.* 272 Mass. 502, 508.[1]

---

[1] A review of the defective delinquent statutes indicates that when the Legislature intended that there be a finding of guilt as a prerequisite to commitment as a defective delinquent it included such a requirement in the statute. Thus, St. 1911, c. 595, § 1, required for commitment as a defective

2. The petitioner further contends that if G. L. c. 123,
§ 113, does not require a finding of guilt as a prerequisite
to commitment it is unconstitutional. The petitioner stresses
the point that without a requirement of a finding of guilt the
standards for commitment as a defective delinquent are
vague and uncertain and ". . . [smack] of preventive de-
tention." We disagree. Under § 113, after the district
attorney files an application for commitment of a defendant,
the court is empowered to commit him for not more than
thirty-five days observation in a defective delinquent "de-
partment," where he is examined by two medical experts
with a view to determining whether or not he is "mentally
defective." Within thirty-five days the medical experts
submit a written report which is available to the defendant
and his attorney. If this report concludes that the defen-
dant is mentally defective, a hearing is held to determine
whether he shall be committed to a defective delinquent
department. "If, after a hearing and examination of the
record, character and personality of such person the court
finds that such person has *shown himself to be dangerous or
shows a tendency toward becoming such,* that *such tendency
is or may become a menace to the public,* and that such person
is not a proper subject for the school for the feeble minded
or commitment as an insane person, the court shall make a
report of the finding to the effect that the person is a de-
fective delinquent" (emphasis supplied). G. L. c. 123, § 113.
In *Dubois, petitioner,* 331 Mass. 575, this court held St. 1953,
c. 645, to be constitutional. That statute provides for the
new commitment of persons previously committed under
§ 113, by an improper procedure, if after further observa-
tion and examination they are found to be mentally defective
and also dangerous or show a tendency toward becoming

---

delinquent that "it shall appear that the offender has committed the offence
with which he is charged . . . ." Statute 1921, c. 270, § 1, states that the
court may commit a person to the department for defective delinquents if
"it appears that the defendant, within a period of three years, has been found
guilty of an offence for which he might have been committed to any [named]
institution ". . . ." See Report of the Commission to Investigate the Question
of the Increase of Criminals, Mental Defectives, Epileptics and Degenerates,
January 14, 1911, popularly known as The Fernald Report.

such and such tendency is or may become a menace to the public. *Id.* at 579. In upholding the statute, the court stated: "The words 'mentally defective' . . . describe persons whose mentality is less than normal. . . . If used without restriction they would serve to describe all persons of deficient mentality whether the deficiency be great or small. The statute, however, provides a specific qualification. It states that, to justify the commitment of the person mentally defective, he must either be dangerous or show a tendency to become such, of such character that it is or may be a menace to the public. We think that this provision relieves the statute from any just claim that the class of persons made subject to commitment is too vague and indefinite. The term 'dangerous' is commonly understood, when applied to a person, as meaning one likely to cause or create danger. See *Commonwealth* v. *M'Neill*, 19 Pick. 127, 140–141. The danger may be either to the person himself or to others. See *Look* v. *Dean*, 108 Mass. 116, 120. Danger according to dictionary definition is the exposure or liability to injury, loss, pain, or other evil. See G. L. . . . c. 123A, § 1, inserted by St. 1947, c. 683. It cannot be said that in providing for the commitment of mentally defective persons who are dangerous or may become so the Legislature has failed to establish a reasonable and practical standard for the guidance of the courts." *Id.* at 580.

The petitioner argues that the *Dubois* case may be distinguished from the present case on the basis that a different statute is involved and that Dubois had pleaded guilty to burglary before his commitment. But the case does in fact deal with the precise language that the petitioner is now claiming to be vague and indefinite. We believe the *Dubois* case to be dispositive of the petitioner's contention that § 113 is void for vagueness.

The petitioner argues that without a requirement of a finding of guilt there is danger in permitting the commitment of persons on the basis of anticipated acts. See *Williamson* v. *United States*, 184 F. 2d 280, 282–283 (2d Cir.), quoted in *Alegata* v. *Commonwealth*, 353 Mass. 287, 301.

But in the present case, the petitioner was not "jailed." The provisions for commitment of persons as defective delinquents are not criminal or penal. Section 113 involves rather "[t]he general power of the Legislature, in its capacity as parens patriae, to make suitable provisions for incompetent persons who are unable to take care of themselves." *Dubois, petitioner,* 331 Mass. 575, 578–579. There can be no doubt, however, that extreme caution must be exercised by the courts in dealing with such cases. "Since we are not here dealing with *penal* legislation we should be especially cautious of substituting our own predilections concerning psychiatry for those of a factfinding body entrusted with formulating our legal and social policies; courts have neither the authority nor the facilities nor the competence for marshalling the data necessary to displace the policy judgments of the legislature." *Cross* v. *Harris,* 418 F. 2d 1095, 1109 (Ct. App. D. C.) (Burger, J., concurring and dissenting in part). See *Sas* v. *Maryland,* 334 F. 2d 506 (4th Cir.).

The petitioner also argues that "there is no justification for the application of § 113 to those charged with an offense while others mentally deficient in the general population and even inmates of schools for the feeble minded and reform schools are not subject to commitment under the defective delinquent statute." This is basically an equal protection argument. This court has already held that § 113 does not violate the equal protection clause. *Commonwealth* v. *Bigwood,* 334 Mass. 46, 50. One effect of charging a defendant with a crime under § 113 is merely "to furnish the occasion for bringing up in court the issue of his mental condition," in so far as it may create danger to himself and to others. *Id.* at 49. Section 113 does not violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States because it "applies alike to all persons in the same category, that is to say, persons accused of certain specified crimes who after a full hearing are found to be defective delinquents under a statutory definition that does not involve a finding of guilt of any crime." *Id.* at 50.

Also, "[a]lthough the principal contention of the petitioner as to the unconstitutionality of the statute relates to the alleged lack of a definite standard, it may be noted that the essential elements of due process are satisfied by the provisions for notice and opportunity to be heard." *Dubois, petitioner*, 331 Mass. 575, 580–581.

The case is remanded to the Superior Court where the following entry is to be made: Petition dismissed.

*So ordered.*

