MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION.

Suffolk.    May 8, 1973. — June 4, 1973.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Taxation,* Urban redevelopment project. *Equity Jurisdiction,* Declaratory relief. *Election. Equity Pleading and Practice,* Amendment, Parties, Declaratory proceeding.   *Statute,* Construction. *Words,* "At the rate for such year."

While pursuing administrative remedies, the developer of an urban redevelopment project was not barred from also seeking declaratory relief against the Commissioner of Corporations and Taxation where only a novel question as to the interpretation of the applicable statute was involved and had a public interest beyond the parties. [688]

In the proviso of G. L. c. 121A, § 10, that the excise payable by an urban redevelopment corporation "in any year shall not be less than the amount which the city or town would receive for taxes, at the rate for such year," the phrase "at the rate for such year" means the local rate of the year with respect to which the excise is paid, not the next year in which it is payable. [689–692]

BILL IN EQUITY filed in the Superior Court on July 27, 1971.

The suit was heard by *Linscott,* J.

*Charles M. Furcolo,* Assistant Attorney General, for the Commissioner of Corporations and Taxation.

*Jerome Preston, Jr.* (*Peter W. Coogan & Michael J. Schubert* with him) for Massachusetts Mutual Life Insurance Company.

WILKINS, J.   The plaintiff, which has undertaken an authorized urban redevelopment project in the city of Springfield (see G. L. c. 121A, § 18), seeks declaratory relief under G. L. c. 231A against the defendant Commissioner concerning the proper method of determining the excises payable by it under G. L. c. 121A, § 10, because of the existence of its project during the calendar years 1968, 1969 and 1970.   The basic issue is whether in the circumstances the calculation of the plaintiff's excise for each of those years should employ the local real estate tax rate for the year in which the excise was payable, as the Commissioner asserts, or whether that calculation should employ the local real estate tax rate for the year immediately prior to the year in which the excise was payable, as the plaintiff claims.

The Commissioner appeals from a final decree declaring that the plaintiff's excises were improperly determined by him and ordering the repayment, with interest, of the amount of the excises paid by the plaintiff in excess of the amount which should have been properly assessed. At the request of the Commissioner, supported by the plaintiff, this court granted direct appellate review. G. L. c. 211A, § 10, inserted by St. 1972, c. 740, § 1.[1]

The plaintiff is obliged under G. L. c. 121A, § 10, as amended through St. 1969, c. 540, § 1,[2] to "pay in each

---

[1] Although this court granted direct appellate review to consider a matter of first impression likely to be of interest to certain other urban redevelopment corporations and to the Commissioner in his dealings with them, our decision makes no attempt to deal with G. L. c. 121A, § 10, in relation to recent legislation changing municipalities to fiscal years commencing July 1.   See St. 1969, c. 849, and St. 1971, c. 766.

[2] The third (and relevant) paragraph of § 10, as now amended, reads as follows: "During the period of forty years after the organization of a corporation under this chapter, such corporation shall pay in each calendar year to the commonwealth with respect to its corporate existence at any time within the preceding calendar year an excise equal to the sum of the following: namely, an amount equal to five per cent of its gross income in such preceding calendar year, from all sources, and an amount equal to ten dollars per thousand upon the

363 Mass. 685                                                    687

Massachusetts Mut. Life Ins. Co. *v.* Commissioner of Corps. & Taxn.

calendar year to the commonwealth with respect to its corporate existence at any time within the preceding calendar year an excise . . ." computed according to a formula "provided, that the excise payable in any year shall not be less than the amount which the city . . . would receive for taxes" based on the lesser of two alternatives. As applied to the plaintiff, for the taxable years involved, the proviso is applicable and the excise is arrived at by using the lesser of two valuations. Under both the Commissioner's and the plaintiff's theory the lesser valuation in the circumstances is the one which involves the application of a local real estate tax rate to the average of the assessed valuations of the premises on the three assessment dates next prior to acquisition of the premises by the plaintiff.[3] The dispute centers on which year's local real estate tax rate should be used. In all events, the excise must be paid on or before March 15 of the year in which it becomes payable.[4]

---

valuation determined as hereinbefore provided to be the fair cash value as of January first in the year in which the excise becomes payable of all real and tangible personal property of such corporation, including all real and tangible personal property leased by it which is exempted by this section from taxation under chapter fifty-nine; provided, that the excise payable in any year shall not be less than the amount which the city or town would receive for taxes, at the rate for such year, upon whichever of the following valuations is the lesser: (a) the valuation upon which the aforesaid amount equal to ten dollars per thousand is computed; or (b) the average of the assessed valuations of the land and all buildings and other things erected thereon or affixed thereto on the three assessment dates, in the case of land purchased, taken or leased by such corporation from a housing authority, redevelopment authority, city, town or corporation wholly owned or controlled by a city or town, next preceding the acquisition of the land by such housing authority, redevelopment authority, city, town or wholly owned or controlled corporation, and in the case of all other land purchased, taken or leased by a corporation organized under this chapter, next preceding the acquisition thereof by such corporation, the assessed valuation for each assessment date being reduced by all abatements, if any."

[3] In the instance of an insurance company the property to be valued is limited to the particular project or projects undertaken under G. L. c. 121A. See par. (g) of G. L. c. 121A, § 18.

[4] See G. L. c. 121A, § 10, fifth paragraph, incorporating the provisions of G. L. c. 63 concerning the collection and payment of the excise, including G. L. c. 63, § 35, which provides that the return shall be filed on or before March 15 for an entity with a taxable year which is a calendar year and G. L. c. 63, § 48, which provides that the entire "excise tax" is due and payable on the due date of the return.

Before March 15, 1969, the plaintiff filed an excise return with respect to its project for the calendar year 1968. That excise, in the amount of $209,894, was determined on the basis of the 1968 Springfield tax rate ($54.50 per $1,000 of assessed valuation). The defendant recomputed the plaintiff's excise using the 1969 Springfield tax rate ($57.80 per $1,000 of assessed valuation) and notified the plaintiff that he had assessed its excise at $222,857.01 (including interest) and that the plaintiff owed a balance on its 1968 excise. The plaintiff paid the balance (including additional interest) under protest. Similar circumstances took place with respect to the excise payable for each of the next two calendar years (1969 and 1970), but, because the issues are the same for each year, they need not be described here, except to state that the Springfield tax rate continued to rise in 1970 and 1971.

The plaintiff, while pursuing administrative remedies, has brought this bill for declaratory relief to obtain an answer to the controversy, which is presented on facts which have been stipulated.

The Commissioner has raised four procedural objections to the granting of the declaratory relief sought by the plaintiff. None of them has merit. (1) This is an appropriate occasion in which to grant declaratory relief prior to the exhaustion of administrative remedies. The only issue is one of law. It is a novel question. It seems to be a repetitive problem and has public interest beyond the parties. Recognizing that the issue whether to grant declaratory relief, where another remedy may be available, is one of discretion, we think declaratory relief is appropriate here. *Meenes* v. *Goldberg*, 331 Mass. 688, 690–691. *Madden* v. *State Tax Commn.* 333 Mass. 734, 737. *Massachusetts Assn. of Tobacco Distribs.* v. *State Tax Commn.* 354 Mass. 85, 88. (2) There is no requirement that the plaintiff elect between its administrative remedies and this bill for declaratory relief. A taxpayer should not be compelled at its peril to abandon any avail-

able administrative remedy in order to qualify for declaratory relief under G. L. c. 231A. (3) There was no abuse of the judge's discretion in allowing the plaintiff to amend its bill to add a request for declaratory relief as to the taxable year 1970. *Schertzer* v. *Somerville*, 345 Mass. 747, 750. *Alpert* v. *Commonwealth*, 357 Mass. 306, 318. (4) The city of Springfield is not a necessary party to this proceeding for declaratory relief. G. L. c. 231A, § 8. *Massachusetts Assn. of Tobacco Distribs.* v. *State Tax Commn.* 354 Mass. 85, 88. *Trustees of Tufts College* v. *Volpe Constr. Co. Inc.* 358 Mass. 331, 340. Both sides of the issue have been argued before us by the principal antagonists. Although it is financially interested, the city is not a disputant in the controversy over the interpretation of § 10. We, therefore, turn to the substantive issue between the parties.

The third paragraph of G. L. c. 121A, § 10, provides (in part) "that the excise payable in any year shall not be less than the amount which the city or town would receive for taxes, *at the rate for such year*, upon whichever of the following valuations is the lesser . . ." (emphasis supplied). The Commissioner argues that the words "rate for such year" clearly and unambiguously refer to the rate for the year in which the excise is payable. The plaintiff, however, asserts that the words "such year" refer to the calendar year with respect to which the excise is paid (i.e., the year prior to the year of payment) and that at the very least the words are ambiguous. The plaintiff argues that the position advanced by the Commissioner creates such an impractical situation that if the words "at the rate for such year" are ambiguous, they must be read to mean the local tax rate for the year prior to the year in which the excise becomes payable.

The parties have agreed that no relevant Springfield tax rate could have been fixed until notice of the amount of State revenue to be distributed was received from the State Tax Commission (see G. L. c. 59, § 23, as amended

690                                      363 Mass. 685

Massachusetts Mut. Life Ins. Co. *v.* Commissioner of Corps. & Taxn.

by St. 1963, c. 160, § 13, and G. L. c. 58, § 25A).[5]   The parties have further agreed that in the applicable years the Springfield tax rate was not set until June 6, 1968; July 7, 1969; July 8, 1970; and September 8, 1971, respectively.[6]   The plaintiff argues that the Legislature cannot have intended that on or before March 15 in each year an excise should be paid based on the local tax rate for that year, a tax rate which the plaintiff did not and could not know, because it had not yet been fixed.[7]

These extraneous but practical considerations may not, of course, be considered by us if the relevant language of § 10 is "clear and unambiguous" and requires the result urged by the Commissioner, "[e]ven if an injustice or a hardship were to result." *Milton* v. *Metropolitan Dist. Commn.* 342 Mass. 222, 227.   Various aids to which courts turn for assistance in construing statutes become available only when the language of a statute is ambiguous. *Chouinard, petitioner,* 358 Mass. 780, 782.[8]   It is

---

[5] Generally in recent years these notices, commonly called "cherry sheets," have not themselves been distributed early enough in any calendar year to permit the determination of local tax rates before March 15.   Cherry sheets recently have been available as follows: May 19, 1966; May 25, 1967; March 13, 1968; June 16, 1969; February 26, 1970; and June 24, 1971.

[6] In fact, the record shows that from 1935–1971, inclusive, the Springfield tax rate was never set earlier than April 29.   It also shows that for other municipalities having c. 121A projects the local tax rate has rarely been set prior to March 15.   In most such municipalities the tax rate has never in the past twenty-five years been set before March 15.

[7] The taxpayer is not entitled as of right to an extension of time for the filing of its return, although in certain circumstances an extension may be allowed (G. L. c. 63, § 68B).   There is an obligation to pay interest at the annual rate of eight per cent on the amount which should have been paid on or before the "statutory due date." G. L. c. 58, § 31A.   The Commissioner has no discretion to waive this interest obligation.   The plaintiff points to the inequity of having to pay interest on an unpaid excise where the amount of the excise is not determinable on the "statutory due date."

[8] For examples of aids sometimes used in interpreting ambiguous statutes, see *Hood Rubber Co.* v. *Commissioner of Corps. & Taxn.* 268 Mass. 355, 358 (the requirements of practical administration); *Worcester* v. *Quinn,* 304 Mass. 276, 281 (steps in the enactment of legislation); *Bell* v. *Treasurer of Cambridge,* 310 Mass. 484, 489 (a construction which would lead to an absurd and unreasonable conclusion not adopted, where the language "is fairly susceptible to a construction that would lead to a logical and sensible result"); *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket*

our duty, however, to interpret a statute, if possible, so "as to make it an effectual piece of legislation in harmony with common sense and sound reason." *Morrison* v. *Selectmen of Weymouth,* 279 Mass. 486, 492. *Atlas Distrib. Co.* v. *Alcoholic Beverages Control Commn.* 354 Mass. 408, 414.

If the applicable language of § 10 had been adopted in its present form as an integrated whole, we might conclude that the words "at the rate for such year" clearly and unambiguously refer to the year next previously referred to in § 10, that is, the year in which the excise is payable. We note, however, that § 10 was amended in 1956. See St. 1956, c. 640, § 4. Both parties correctly agree that prior to the 1956 amendment the words "at the rate for such year" referred to the local tax rate of the taxable year (i.e., the rate for the year prior to the year in which the excise was payable). In the 1956 amendment the words "at the rate for such year" were not changed. The reference to a year which now appears in § 10 next before the words "at the rate for such year" was inserted by the 1956 amendment.

We do not attribute to the Legislature an intention in the 1956 amendment to change the previous meaning of the words "at the rate for such year." When statutory language is reënacted, it is a principle of statutory construction that no change was intended in its meaning or scope. *Commonwealth* v. *Welosky,* 276 Mass. 398, 409. Although careful changes were made in references to particular years in the 1956 amendment, none was made in the words "at the rate for such year." [9]

*S.S. Authy.* 330 Mass. 422, 429 (commission's report to the Legislature) ; *Worcester County Natl. Bank* v. *Commissioner of Banks,* 340 Mass. 695, 701 (if fairly possible, a statute should be construed to avoid grave doubts about its constitutionality) ; *Massachusetts Assn. of Tobacco Distribs.* v. *State Tax Commn.* 354 Mass. 85, 89 (doubts in a tax statute to be resolved in favor of the taxpayers).

[9] The changes made by the 1956 amendment in the most relevant language in § 10 are set forth below with the words added shown in italics and the words deleted shown in brackets: "provided, that *the* [such] excise *payable in any year* shall not [in any year] be less than *the* [an] amount [equal to that] which the city or town would receive for taxes, at the rate for such year, upon *whichever of the following valuations is the lesser. . . .*"

We note that the 1956 amendment changed certain assessed valuations to be used from those of the prior year (i.e., the calendar year with respect to which the excise was payable) to the assessed valuations as of January first of "the year in which the excise becomes payable." We think it is significant that no change was made in the words "rate for such year," as could have been easily done by the substitution of the words "the year in which the excise becomes payable."

In advancing by one year the date of the assessed valuations to be used in certain circumstances in calculating the excise under § 10, the Legislature recognized the need for the availability of the current year's assessed valuations before March 15 of each year, and a paragraph was added to § 10 (see the second paragraph) to assure that on or before March first the assessors would certify the fair cash value of property to affected taxpayers. Recognizing the care manifested in the 1956 amendment to assure the timely availability of the current year's assessment, it exceeds the bounds of reason to conclude that the Legislature intended to create an uncertainty by changing the appropriate local tax rate from one already ascertained to one likely to be unascertainable on or before March 15.

We hold that the words "at the rate for such year" refer to the local tax rate of the year immediately prior to the year in which the excise is payable.

*Decree affirmed.*