COMMONWEALTH *vs.* HYMAN GOLDBERG.

Suffolk.    October 1, 1945. — January 4, 1946.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & WILKINS, JJ.

*Landlord and Tenant,* Furnishing of services, Tenancy at will.  *Words,* "Lessor."

The provisions of G. L. (Ter. Ed.) c. 186, § 14, apply to tenancies at will.

COMPLAINT, received and sworn to in the East Boston District Court on April 13, 1945, charging violation of G. L. (Ter. Ed.) c. 186, § 14, in failing to heat a certain apartment occupied for dwelling purposes.

On appeal to the Superior Court, the case was heard without a jury by *Hobson,* J., a judge of a District Court sitting under statutory authority.

*G. Gruzen,* for the defendant.

*A. F. Iovino,* Assistant District Attorney, for the Commonwealth.

QUA, J.  The sole question to be determined is whether the provisions of G. L. (Ter. Ed.) c. 186, § 14, apply to tenancies at will.

This section reads as follows: "Any lessor of any building or part thereof occupied for dwelling purposes, other than a room or rooms in a hotel, lodging house or rooming house, who is required by the terms, expressed or implied, of any contràct or lease, to furnish water, heat, light, power, elevator service or telephone service to any occupant of such building, or part thereof, who wilfully or intentionally fails to furnish such water, heat, light, power, elevator service or telephone service at any time when the same is necessary to the proper or customary use of such building, or part thereof, or any lessor who wilfully and intentionally interferes with the quiet enjoyment of any such leased premises by the occupant, shall be punished by a fine of not more than one hundred dollars, or by imprisonment for not more than six months."

It seems a little unusual at this time in this Commonwealth to refer to a landlord in a tenancy at will as a "lessor." The somewhat unfamiliar sound of the word when used in that sense may be due to the fact that for a great many years it has been provided by statute, without the exceptions found in the original English act and in the statutes of many States, that any estate or interest in land created without an instrument in writing should have the force and effect of an estate at will only. G. L. (Ter. Ed.) c. 183, § 3. A sharp distinction has therefore grown up between tenancies for definite terms created only by written leases and tenancies at will created by parol. But the words lease, lessor, and lessee are nevertheless sufficiently comprehensive to include in appropriate instances tenancies at will and the parties to such tenancies. Tenancies at will have been referred to as "leases at will." *Cheever* v. *Pearson*, 16 Pick. 266, 271. They have been referred to as parol "leases," and the landlord has been called the "lessor" and the tenant the "lessee." *Elliott* v. *Stone*, 1 Gray, 571, 574, 575, 576. It has been said that a tenancy at will may be created by an oral "lease." *Crowe* v. *Bixby*, 237 Mass. 249, 254. See *Flanagan* v. *Welch*, 220 Mass. 186, 191. It is held that a tenant at will whose tenancy has terminated is liable to summary process under G. L. (Ter. Ed.) c. 239,

§ 1, as a "lessee of land" who "holds possession without right after the determination of a lease . . .." *Marsters* v. *Cling*, 163 Mass. 477, 478. *Ratner* v. *Hogan*, 251 Mass. 163. And in works of general reference definitions of the words lease, lessor, and lessee are so phrased that these words are made properly applicable in cases of tenancies at will as well as in cases of tenancies under written leases. 2 Bl. Com. 317. Black's Law Dict. (3d ed.) 1081. Bouvier's Law Dict. (8th ed.) vol. 2, pages 1887, 1888. 35 C. J., Leases & Agreements, 1139, 1140, 1142. Taylor, Landlord & Tenant (9th ed.) § 14. Without multiplying citations, we have said enough to show that the wording of the statute in question does not require a construction that would exempt from its penalties landlords who have let their premises without leases in writing if otherwise it seems to have been the intent of the Legislature to include them.

We think that the Legislature did intend to include landlords where there were no written leases. The section in question was first enacted in the early part of 1920 as temporary legislation only and as an emergency law for the declared purpose of providing "immediate relief from hardship incident to the present scarcity of houses and buildings available for habitation." St. 1920, c. 555, preamble and § 1. It is well known that at that time, following the first world war, there was a shortage of living accommodations comparable to that which exists at the present time. Then, as now, a very large proportion of rented properties, particularly of dwelling houses and apartments, was occupied by tenants at will to whom their landlords were required by the express or implied terms of the letting to furnish one or more of the services mentioned in the statute. The statute would in great measure fail to accomplish the obvious purpose for which it was originally enacted if it did not apply in cases of tenancies at will. The statute of 1920 was continued in force by St. 1921, c. 491; St. 1922, c. 357, § 2; St. 1923, c. 6; St. 1924, c. 72, § 1; St. 1925, c. 192; and St. 1926, c. 172. It was changed by St. 1927, c. 339, § 1, by inserting the words "occupied for

dwelling purposes, other than a room or rooms in a hotel, lodging house or rooming house," and was given its present permanent position as § 14 of c. 186 of the General Laws. The 1927 act was passed after the special commission on the necessaries of life had reported to the Legislature its recommendation that the act of 1920 be made permanent for reasons applicable to tenants at will as fully as to tenants under written leases. House Document No. 1100 of 1927 at pages 89, 92. The history of the statute, including the amendment restricting its application to buildings or parts thereof occupied for dwelling purposes but carefully excepting rooms in hotels, lodging houses and rooming houses, which we believe are seldom the subject of written leases, is consistent with, and we think has some tendency to confirm, the construction which we give to the statute.

In our opinion there was no error in the ruling that the statute applies to landlords under tenancies at will. In accordance with the terms of the report the finding of guilty is to stand. The judgment is affirmed.

*So ordered.*