CITY OF BOSTON vs. U.N.A. CORPORATION; MASSACHUSETTS
PORT AUTHORITY, third-party defendant
(and a companion case[1]).

Suffolk.   December 4, 1980. — February 3, 1981.

Present: HALE, C.J., CUTTER, & KASS, JJ.

*Statute*, Construction. *Massachusetts Port Authority. Taxation*, Real
estate tax: exemption; Massachusetts Port Authority; Leased property.

In an action by the city of Boston under G. L. c. 60, § 35, for unpaid real
estate taxes on the defendants' leasehold interests in parts of Common-
wealth Pier 5, a finding was warranted that Pier 5 was located in the
"Commonwealth Flats," and, therefore, business lessees of Pier 5 were
subject to taxation under St. 1956, c. 465, § 17; resort to a report of the
special commission which drafted St. 1956, c. 465, which recom-
mended that Pier 5 should be exempt from taxation, could not affect
the interpretation of § 17 where there was no ambiguity in the statute.
[299-303]
The Massachusetts Port Authority was ultimately liable for taxes assessed
against lessees for the years 1970 and 1971 under the exception set
forth in St. 1956, c. 465, § 17. [303]

TWO ACTIONS OF CONTRACT.  Writs in the Superior Court
dated May 9, 1972.

The actions were heard by *Fine*, J.

*Robert K. Gad, III* (*George C. Caner, Jr.*, with him) for
the Massachusetts Port Authority.

*Gerald McTernan*, Assistant Corporation Counsel, for
the city of Boston.

*Patricia S. Nelson* for U.N.A. Corporation.

*Howard S. Fisher* for Robert M. Feinberg.

HALE, C.J.  In 1972 the city of Boston (city) brought ac-
tions in contract under G. L. c. 60, § 35, for unpaid real

_____

[1] City of Boston vs. Robert M. Feinberg; Massachusetts Port Authority,
third-party defendant.

estate taxes against the defendants U.N.A. Corporation and Robert M. Feinberg. The taxes were assessed for the years 1970 and 1971 on the defendants' leasehold interests in parts of Commonwealth Pier 5. Each defendant brought a third-party action against the Massachusetts Port Authority (Authority), their lessor. The cases were consolidated for trial in the Superior Court where, after a trial, the judge made findings of fact, conclusions of law and an order for judgment. Pursuant to that order judgments were entered in each case for the city against the defendants and for the defendants against the Authority. The defendants and the Authority have appealed, and the appeals were consolidated in this court for the purposes of briefing and argument.

Common to each appeal is the contention that the city was without authority to levy the taxes which it seeks to recover. As the resolution of this issue in favor of the defendants and the Authority would be dispositive, we address it first.

The Authority, which was created by St. 1956, c. 465, its enabling act, on February 17, 1959, took control of, among other things, the port properties located in the port of Boston. See *Massachusetts Port Authy.* v. *Treasurer & Receiver Gen.*, 352 Mass. 755, 757 (1967). These properties included Pier 5, otherwise known as the Commonwealth Pier. Section 17 of the enabling act, which we set out in full in the margin,[2] provides in general that both the Authority

---

[2] "The exercise of the powers granted by this act will be in all respects for the benefit of the people of the commonwealth, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and as the operation and maintenance of the projects by the Authority will constitute the performance of essential governmental functions, the Authority shall not be required to pay any taxes or assessments upon any project or any property acquired or used by the Authority under the provisions of this act or upon the income therefrom, and the bonds issued under the provisions of this act, their transfer and the income therefrom (including any profit made on the sale thereof) shall at all times be free from taxation within the commonwealth, and no property of the Authority shall be taxed to a lessee thereof under section three A of

and the lessees of any of its properties are to be exempt from taxation. A limited exception permits the assessment of taxes to business lessees (but not to the Authority) of "lands of the Authority . . . situate in that part of the city called South Boston and constituting a part of the Commonwealth Flats." An issue in this case is whether Commonwealth Pier 5 is a part of those flats.

The defendants and the Authority also contended before the trial judge and have argued here that the quoted language is ambiguous. They maintain that the legislative intent as disclosed by the legislative history, specifically 1956 House Doc. No. 2575, which is entitled, Report of the Special Commission on the Massachusetts Port Authority, was not to include Pier 5 within that limited exception and thus leasehold interests in parts of it would not be taxable. The Special Commission (Commission) had been created by c. 146 of the Resolves of 1955 to study and make recommendations for, among other things, the consolidation of certain agencies and the creation of a Massachusetts Port Authority. Less than a page of that report, which consists of a total of 37 pages, dealt with the Commonwealth flats and that part of the report, at 35, concludes with the following:

chapter fifty-nine of the General Laws; provided, however, that anything herein to the contrary notwithstanding, lands of the Authority, except lands acquired by the commonwealth under the provisions of chapter seven hundred and five of the acts of nineteen hundred and fifty-one, situate in that part of the city called South Boston and constituting a part of the Commonwealth Flats, *and lands acquired by the Authority which were subject to taxation on the assessment date next preceding the acquisition thereof*, shall, if leased for business purposes, be taxed by the city *or by any city or town in which the said land may be situated* to the lessees thereof, respectively, in the same manner as the lands and buildings thereon would be taxed to such lessees if they were the owners of the fee, except that the payment of the tax shall not be enforced by any lien upon or sale of the lands, but a sale of the lease-hold interest therein and of the buildings thereon may be made by the collector of the city in the manner provided by law in case of non-payment of taxes for selling real estate, for the purpose of enforcing the payment of the taxes by such lessees to the city *or town* assessed under the provisions hereof" (emphasis supplied).

"Your Commission recommends that the city of Boston be allowed to continue to tax in the limited manner referred to those areas of the flats which it had the right to tax at the time of transfer (exclusive of Commonwealth Pier No. 5) to the recommended Massachusetts Port Authority.

"The draft of legislation hereto appended contains legislation to carry this recommendation into effect (see Appendix A, section 17)."

Section 17 of Appendix A of the report is worded the same as the § 17 enacted in St. 1956, c. 465, except for those words which we have italicized in § 17, set out in note 2, *supra*.

It appears to us that as applied to this case the only part of § 17 that is unclear is whether Pier 5 is located in the "Commonwealth Flats." The judge found as a fact that it is. That finding is supported by the evidence and stipulations before the judge and is not erroneous.[3]

Given that finding, the plain language of § 17 of St. 1956, c. 465, permits no other reading than that parts of Pier 5 which are leased for business purposes are taxable by the city to the lessee. "[T]he general rule of statutory construction is that a statute that is not ambiguous cannot be interpreted by resort to legislative history. 'The plain meaning of a statute cannot be affected by resort to proceedings incident to its passage. Light may be sought from that source only to illumine statutory language of doubtful import. Other information than that afforded by the words of the statute can be examined only to aid in the solution of an ambiguity.'" *Chouinard, petitioner*, 358 Mass. 780, 782 (1971), quoting from *Allen* v. *Commissioner of Corps. & Taxn.*, 272 Mass. 502, 508 (1930). *Rosenbloom* v. *Kokofsky*, 373 Mass. 778, 781 (1977).

---

[3] We note that the construction of Pier 5 and the financing for it were provided for in St. 1897, c. 513, the title of which is "An Act to provide for the construction of a pier and dock on the commonwealth's flats at South Boston."

The rule stated in *Price* v. *Railway Exp. Agency, Inc.*,
322 Mass. 476, 484 (1948), which informs us that "[w]e
must look beyond the letter of a statute where a literal con-
struction would be inconsistent with the legislative intent,"
is of no assistance to the defendants or the Authority as we
do not detect any such inconsistency. The Commission rec-
ommended (as shown in the portion of its report which we
have set out above) that the city be allowed to "continue to
tax . . . those areas of the flats which it had the right to tax"
at the time of the recommended transfer to the Port Author-
ity (exclusive of Commonwealth Pier 5). Section 17 of the
draft of the proposed legislation did not include that specific
language. Similar, but not identical, language (the itali-
cized language in footnote 2, *supra*), was adopted by the
Legislature in § 17 as enacted by St. 1956, c. 465. That
language did not include the parenthetical reference to Pier
5. We note too that the city's taxing authority as to lease-
hold interests in the Commonwealth flats, for all practical
purposes, is the same as stated in St. 1904, c. 385, § 1.[4]

Having this in mind, we cannot say that the omission of
any reference to Commonwealth Pier 5 in the exception to
the tax exemption provided in § 17, as enacted, was not in-
tended. Indeed, for us to say that the Legislature mistaken-
ly overlooked the provisions as to Pier 5 would be presump-
tuous. For us to go further and to rewrite the legislation so
as to include the reference to Pier 5 would be to trespass on
the exclusive domain of the Legislature. Compare *Milton*

---

[4] Statute 1904, c. 385, § 1 states: "The lands of the Commonwealth,
situate in that part of the city of Boston called South Boston and known as
the Commonwealth Flats, shall, if leased for business purposes, be taxed
by the city of Boston to the lessees thereof, respectively, in the same man-
ner as the land and buildings thereon would be taxed to such lessees if they
were the owners of the fee, except that the payment of the tax shall not be
enforced by any lien upon or sale of the lands: but a sale of the leasehold
interest therein and of the buildings therein may be made by the collector
of the city of Boston in the manner provided by law in case of non-pay-
ment of taxes for selling real estate, for the purpose of enforcing the pay-
ment of the taxes by such lessees to the city of Boston assessed under the
provisions hereof."

v. *Metropolitan Dist. Commn.*, 342 Mass. 222, 227 (1961). There is nothing in *Price, supra,* which requires, or permits, us to do so.

We turn now to the issue of the incidence of the tax. The judge found that the Authority was ultimately liable for the tax. Her ruling was based on the decisions in *Boston Molasses Co.* v. *Commonwealth,* 193 Mass. 387 (1907), and *Gloucester Ice & Cold Storage Co.* v. *Assessors of Gloucester,* 337 Mass. 23 (1958). We uphold her ruling on the same basis.[5] See *Opinion of the Justices,* 365 Mass. 665, 672-673 (1974). The exemption from property tax contained in the Authority's enabling act does not require a different result. *Boston Molasses, supra,* at 389.

*Judgments affirmed.*

---

[5] Since 1974 lessees of the Authority may not recover from the Authority property taxes assessed to them under the present G. L. c. 59, § 2B. See the various amendments to that provision from St. 1974, c. 383, § 1 (amending the former G. L. c. 59, § 3A, which was repealed by St. 1978, c. 580, § 16), through St. 1979, c. 797, § 11. (We assume that the reference to § 15 in St. 1979, c. 797, § 11, is intended to refer to the present G. L. c. 59, § 12C, which contains the same language as the former G. L. c. 59, § 15, which was repealed by St. 1978, c. 580, § 30.)