NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

11-P-1474                                       Appeals Court

CAPE COD SHELLFISH & SEAFOOD COMPANY, INC., & others[1] vs. CITY
OF BOSTON & another.[2]

No. 11-P-1474.

Suffolk.      October 9, 2013. - November 12, 2014.

Present:  Cypher, Katzmann, & Maldonado, JJ.


Taxation, Exemption, Leased property, Abatement, Real estate
     tax:  exemption, abatement.  Contract, Lease of real
     estate.  Landlord and Tenant, Taxation, Tenancy at
     sufferance, Lease as contract.  Real Property,
     Lease.  Massachusetts Port Authority.  Boston.



     Civil action commenced in the Superior Court Department on
November 9, 2004.

     After review by this court, 74 Mass. App. Ct. 1127 (2009),
the case was heard by Elizabeth M. Fahey, J., on a motion for
summary judgment.

_____

     [1] John Mantia & Sons Co., Inc.; Atlantic Coast Seafood,
Inc.; New England Marketers, Inc.; and Great Eastern Seafood,
Inc.

     [2] Massachusetts Port Authority (Massport).  The plaintiffs
and Massport stipulated to dismissal of the plaintiffs' claims
against Massport and Massport's counterclaims.  Massport has not
participated in this appeal.

Marshall F. Newman for the plaintiffs.

Adam Cederbaum, Assistant Corporation Counsel, for city of Boston.


MALDONADO, J.  The plaintiffs appeal from a Superior Court judgment in favor of the city of Boston (city) in its effort to tax the plaintiffs as lessees of property owned by the Massachusetts Port Authority (Massport), on Boston's Fish Pier. Although, pursuant to G. L. c. 91 App., § 1-17 (§ 17), as appearing in St. 1978, c. 332, § 2, Massport and its lessees are not required to pay real estate taxes on Massport properties, an exception to the exemption applies to business lessees of property in the area known as the Commonwealth Flats.  In an earlier decision pursuant to our rule 1:28, we determined that the plaintiffs are liable for taxes for their respective lease terms under that exception.[3]  At issue now is whether the

---

[3] See Cape Cod Shellfish & Seafood Co. v. Boston, 74 Mass. App. Ct. 1127 (2009).  In that prior appeal, the plaintiffs here argued that they came within the exception to taxation provided for in G. L. c. 59, § 2B, third par.  We rejected that argument, relying, inter alia, on the clear language of § 17, the case of Boston v. U.N.A. Corp., 11 Mass. App. Ct. 298 (1981) (construing that provision), and the principle of statutory construction that a specific statute, such as § 17, controls over a general statute, such as G. L. c. 59.  Cf. Beacon S. Station Assocs., LSE v. Board of Assessors of Boston, 85 Mass. App. Ct. 301 (2014) (for-profit lessee of Massachusetts Bay Transportation Authority [MBTA] was exempt from real estate taxation pursuant to specific exemption for MBTA property provided in G. L. c. 161A, § 24, and notwithstanding contrary provision in general tax statute, G. L. c. 59, § 2B); id. at 307, quoting from TBI, Inc. v. Board of Health of N. Andover, 431 Mass. 9, 18 (2000)

plaintiffs, all of whom remained on the property after the end of their lease terms, continue to be liable as lessees for the taxes assessed during the holdover period.

Background.  We recount the undisputed facts from the motion judge's May 20, 2011, memorandum of decision and order on the city's motion for summary judgment, supplemented also by the record on appeal as noted.  The plaintiffs, Cape Cod Shellfish & Seafood Company, Inc.; John Mantia & Sons Co., Inc.; Atlantic Coast Seafood, Inc.; New England Marketers, Inc.; and Great Eastern Seafood, Inc., operated wholesale fish and seafood businesses on the Boston Fish Pier, which is owned by Massport and situated in the Commonwealth Flats area of South Boston. The plaintiffs originally occupied the property pursuant to written leases with Massport.  The relevant leases of the plaintiffs covered the period of January 1, 1998, to December 31, 2004, and were virtually identical.  All required the plaintiffs to pay any taxes and fees assessed against the tenant or landlord in relation to the leased premises.  The city sporadically billed the plaintiffs for the real estate taxes due on the leased premises for their respective periods of occupancy; except for a single payment by New England Marketers, Inc., the taxes went unpaid.

("It is a basic canon of statutory interpretation that general statutory language must yield to that which is more specific").

Prior to the expiration of their lease terms, the plaintiffs sought to enter into new leases. Massport refused, citing a lease provision that required a letter from the city indicating that all taxes were current. The plaintiffs filed a declaratory judgment action, as permitted by the leases, seeking a determination that they were not liable for the taxes. Judgment entered in favor of the city for the taxes owing for the period covered by the leases, and, as we have noted, see note 3, supra, this court affirmed.

In the interim, the plaintiffs continued to occupy and pay rent for the Massport property beyond their lease terms. The city supplemented its counterclaims in the declaratory judgment action to recover additional unpaid taxes from the plaintiffs for the time from January 1, 2005, through March 31, 2010, that they had remained on the property after the expiration of the lease term.

The leases contained the following provision concerning the obligations of the tenants in the event of their holding over:[4]

> "If Tenant shall, with the consent of the Landlord, hold over after the expiration of the Term, the resulting tenancy shall be treated as a month-to-month tenancy.

---

[4] The leases for the relevant period were not included in the record on appeal. We take the text of the holdover provision, for the leases covering the period from January 1, 1998, through December 31, 2004, from Massport's answer and counterclaims, to which the parties refer in their briefs on appeal.

Tenant shall pay Base Rent, Additional Rent and any other charges due hereunder and shall be bound by the terms of the Lease. Any holding over by Tenant after the expiration of the Term of this Lease without Landlord's consent shall be treated as a tenancy at sufferance at two hundred percent (200%) of the rents and other charges herein (prorated on a daily basis) and shall otherwise be on the terms and conditions set forth in this Lease, as far as applicable. Any holding over, even with the consent of the Landlord, shall not constitute an extension or renewal of this Lease." (Emphasis supplied.)

The city moved for summary judgment on its supplemented counterclaims, and the judge allowed the motion.[5] The judge reasoned that the plaintiffs, as tenants at sufferance following the expiration of the lease term, continued to operate their businesses and pay rent to Massport, and continued to have a leasehold that was recognized by Massachusetts law for purposes of § 17. The plaintiffs filed this appeal.

Discussion. 1. Applicability of tax exemption after expiration of lease term. General Laws c. 91 App., § 1-17, is part of Massport's enabling act and provides generally for an exemption from taxation for Massport and its lessees. Boston v. U.N.A. Corp., 11 Mass. App. Ct. 298, 299-300 (1981). The purpose of the exemption is to assist Massport in the performance of its essential governmental functions, which are principally aimed at establishing and maintaining the means of public travel. It was anticipated that Massport properties

---

[5] We note that the city has not pursued its remaining counterclaims, which, it acknowledges, are time-barred.

would be devoted to public use.  <u>Opinion of the Justices</u>, 334

Mass. 721, 733, 739 (1956).

The exemption in § 17 includes certain qualifications, one

of which is for Massport lands located in the Commonwealth

Flats, which "shall, if leased for business purposes, be taxed

by the city . . . to the lessees thereof, respectively, in the

same manner as the lands and the buildings thereon would be

taxed to such lessees if they were the owners of the fee

. . . ."[6]  The plaintiffs maintain that after the lease term

expired and they remained on the property, they could no longer

_____

[6] Section 17, first par., provides more broadly:

"The exercise of the powers granted by this act will
be in all respects for the benefit of the people of the
commonwealth, for the increase of their commerce and
prosperity, and for the improvement of their health and
living conditions, and as the operation and maintenance of
the projects by the Authority will constitute the
performance of essential governmental functions, the
Authority shall not be required to pay any taxes or
assessments upon any project or any property acquired or
used by the Authority under the provisions of this act or
upon the income therefrom . . . and no property of the
Authority shall be taxed to a lessee thereof under section
three A of chapter fifty-nine of the General Laws;
provided, however, that anything herein to the contrary
notwithstanding, lands of the Authority, except lands
acquired by the commonwealth under the provisions of
chapter seven hundred and five of the acts of nineteen
hundred and fifty-one situated in that part of the city
called South Boston and constituting a part of the
Commonwealth Flats, and lands acquired by the Authority
which were subject to taxation on the assessment date next
preceding the acquisition thereof, shall, if leased for
business purposes, be taxed by the city or by any city or
town in which the said land may be situated to the lessees

be considered lessees and, therefore, were no longer subject to taxation under the § 17 exception for business lessees of Massport's Commonwealth Flats properties. At that point, they argue, the property came within Massport's exemption under § 17, despite the plaintiffs' continued occupancy.

The express language of the leases persuades us otherwise. The holdover provision in the leases sets out the conditions of a continued tenancy after expiration of the lease term, and expressly states, as well, that any holding over is subject to the applicable provisions of the lease. When they signed the leases, the plaintiffs thereby agreed that they would continue to be bound by the holdover provision, and other applicable

---

thereof, respectively, in the same manner as the lands and the buildings thereon would be taxed to such lessees if they were the owners of the fee, except that the payment of the tax shall not be enforced by any lien upon or sale of the lands, but a sale of the leasehold interest therein and of the buildings thereon may be made by the collector of the city in the manner provided by law in case of nonpayment of taxes for selling real estate, for the purpose of enforcing the payment of the taxes by such lessees to the city or town assessed under the provisions hereof."

We do not consider the parties' arguments, raised for the first time in their respective reply and surreply brief, whether § 17, first par., was amended subsequent to St. 1978, c. 332, § 2 (the version of the statute relied upon by the judge below, the parties, and by this court in our earlier decision). See Pasquale v. Casale, 72 Mass. App. Ct. 729, 738 (2008), quoting from Assessors of Boston v. Ogden Suffolk Downs, Inc., 398 Mass. 604, 608 n.3 (1986) ("Any issue raised for the first time in an appellant's reply brief comes too late, and we do not consider it").

lease provisions, in the event their tenancies extended beyond the lease term.

It has long been held that where, as here, a lease contains a provision governing the conditions of the lessee's occupancy in the event of holding over, the parties' rights continue to be determined by the applicable provisions in the lease, and indeed, the holding over is said to be under the lease. See Warren v. Lyons, 152 Mass. 310, 314-316 (1890) (distinguishing between holding over under the lease and occupying under a new agreement).  See also, e.g., Edwards v. Hale, 9 Allen 462, 464-466 (1864); Rice v. Loomis, 139 Mass. 302, 303-304 (1885).  When the parties to a lease "look to the contingency of the lessee's holding over for some purpose," their agreement in that regard is deemed a "contract to have effect, provisionally after the expiration of the term."  Salisbury v. Hale, 12 Pick. 416, 422 (1832).

Similarly, in cases addressing the amount of rent owing for occupancy beyond the lease term, we have distinguished between holdovers governed by a provision in the lease, in which case the applicable lease provisions control, and holdovers where the lease lacks such a provision, in which case common-law principles are applied.  See, e.g., Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 502-503 (1997); Lawrence v. Osuagwu, 57 Mass. App. Ct. 60, 64-65 (2003) (lease provision

establishing rent due for period beyond lease term controlled, rather than a reasonable rent, the usual measure of landlord's damages against holdover tenant).  As such, the holdover provision contained in the plaintiffs' leases, spelling out their obligations in the event of their holding over, took effect upon the expiration of the lease term and governed their tenancies thereafter.  See Salisbury v. Hale, 12 Pick. at 422.

The case of Commonwealth v. Goldberg, 319 Mass. 7 (1946), confirms our view.  At issue was whether the landlord in a tenancy at will constituted a "lessor" under G. L. c. 186, § 14, providing for prosecution of lessors who interfere with the quiet enjoyment of their premises.  In concluding that the Legislature intended for the statute to cover "landlords who have let their premises without a lease in writing," id. at 9, the court reasoned that "the words lease, lessor, and lessee are nevertheless sufficiently comprehensive to include in appropriate instances tenancies at will and the parties to such tenancies."  Id. at 8.  The court noted that tenancies at will "have been referred to as parol 'leases,' and the landlord has been called the 'lessor' and the tenant the 'lessee.'  Ibid. Given the Goldberg court's conclusion that the landlord and tenant in a tenancy at will, with no written lease, could be considered to be lessor and lessee, we have no hesitation in concluding that here, where the plaintiffs agreed to a holdover

provision in a written lease that was to control their tenancies beyond the lease term, they may properly be characterized as lessees occupying the property under a leasehold.

The case of Corcoran v. Boston, 193 Mass. 586 (1907), cited by the plaintiffs, is not to the contrary. That case involved St. 1904, c. 385, an earlier version of the statutory tax exemption for lands of the Commonwealth, prior to the creation of Massport, and an exception to the exemption indistinguishable from that in § 17 for lands situated in the Commonwealth Flats that were leased for business purposes. See Boston v. U.N.A. Corp., 11 Mass. App. Ct. at 302 & n.4. The question of tax liability arose when a purchaser of property in the Commonwealth Flats took up occupancy, prior to the transfer of ownership, under a contract for a deed. Because the purchaser never actually leased the property, and because the relationship of landlord and tenant never existed between the purchaser and the Commonwealth, the court held that the purchaser was not to be considered a lessee for the period that he occupied the property pending delivery of the deed. 193 Mass. at 587-588. The present case differs in significant respects -- here, the plaintiffs originally occupied the property pursuant to written leases, agreed at the outset to a holdover provision, and, pursuant to that provision, continued to be governed by the applicable lease terms during the holdover period.

We reject the plaintiffs' suggestion that we are to resolve doubts in interpreting legislative use of the word "lessee" in § 17 in the taxpayer's favor.  The plaintiffs rely on a rule of statutory construction that applies in interpreting the tax laws.  See, e.g., Massachusetts Assn. of Tobacco Distribs. v. State Tax Commn., 354 Mass. 85, 89 (1968) (construing G. L. c. 64C, imposing an excise tax on cigarette sales); Davisson v. Commissioner of Rev., 18 Mass. App. Ct. 748, 754 (1984) (construing G. L. c. 65C, to determine whether decedent's interests in out-of-State gas and oil properties were taxable under the estate tax statute); Commissioner of Rev. v. Destito, 23 Mass. App. Ct. 977, 978 (1987) (construing G. L. c. 62, to determine whether New Hampshire resident's income was taxable under the Massachusetts income tax statute).

Section 17, however, by its express terms formulates an exemption from taxation for Massport properties.  Boston v. U.N.A. Corp., 11 Mass. App. Ct. at 299-300.  See Opinion of the Justices, 334 Mass. at 730 (court requested to give opinion as to whether it is "constitutionally competent for the General Court to grant the tax exemptions provided [in Massport's enabling act] . . . with respect to the physical property of [Massport]").  While the Legislature may permit such "reasonable exemptions based upon various grounds of public policy, . . . yet taxation is the general rule."  Animal Rescue League of

Boston v. Bourne's Assessors, 310 Mass. 330, 332 (1941). "It is for this reason that statutes granting exemptions from taxation are strictly construed. A taxpayer is not entitled to an exemption unless he shows that he comes within either the express words or the necessary implication of some statute conferring this privilege upon him." Ibid. See Global Cos., LLC v. Commissioner of Rev., 459 Mass. 492, 494 (2011) (citation omitted) (an exemption is "to be recognized only where the property falls clearly and unmistakably within the express words of a legislative command," and it is the taxpayer's burden to "demonstrate entitlement to the exemption claimed"). See also AA Transp. Co. v. Commissioner of Rev., 454 Mass. 114, 121 (2009).

Based on the foregoing, we conclude that the plaintiffs, upon holding over after the lease term expired, continued to remain on the property under the applicable provisions of their leases, and are properly characterized as business lessees, for purposes of § 17. Accordingly, the plaintiffs have not established entitlement to the tax exemption for Massport properties under that section. Our conclusion also comports with the additional principle of statutory construction that we are to follow "a common sense approach in the interpretation and application of all statutes." State Tax Commn. v. John Hancock Mut. Life Ins. Co., 361 Mass. 125, 131 (1972). It defies common

sense to permit the plaintiffs in this case, who agreed to the leases' holdover provision and who were statutorily and contractually bound to pay taxes during the lease term, to be excused from the obligation by virtue of their simply remaining on the leased property, without Massport's consent, after the expiration of the lease term.

2. _Tax amount_.  As a final matter, the judge properly dismissed the plaintiffs' claims that the city calculated their taxes based on inaccurate square footage measurements.  In challenging the amount assessed, the plaintiffs did not have the option, as they suggest, to elect to pursue either an administrative remedy or, alternatively, a declaratory judgment action as to that claim.  See _Harron Communications Corp_. v. _Bourne_, 40 Mass. App. Ct. 83, 86 (1996) ("For an excessive tax, the exclusive remedy is application for abatement and petition to the Appellate Tax Board").  Compare _Massachusetts Mut. Life Ins. Co_. v. _Commissioner of Corps. & Taxation_, 363 Mass. 685, 688-689 (1973) (taxpayer properly pursued both administrative remedy and declaratory relief as to proper construction of taxing statute).  Accord _Sydney_ v. _Commissioner of Corps. & Taxation_, 371 Mass. 289, 294 n.10 (1976).

Also unavailing is the plaintiffs' argument that the March 30, 2005, denial of the city's motion to dismiss for failure to exhaust administrative remedies permitted the plaintiffs to also

pursue in these proceedings their challenge to the amount of taxes assessed as opposed to only permitting them to proceed on their challenge to the imposition of any tax liability under § 17.  From our review of the appellate record, it appears the issue was neither raised nor decided as part of the motion to dismiss, and we find no support for the plaintiffs' contention that the law of the case permitted them to forego the exclusive statutory remedy for tax abatements.[7]

<u>Judgment affirmed</u>.

---

[7] The first amended complaint, which was the subject of the city's motion to dismiss, did not allege that the taxes assessed were excessive.  The judge's decision on the motion to dismiss addressed only the issue of the plaintiffs' claimed exemption under § 17, and, because it posed a novel question of law, it was permitted to go forward as a declaratory judgment action.  Moreover, the judge here observed that the plaintiffs' claims of excessive taxes were raised for the first time in opposition to the city's motion for summary judgment, and nothing in the record before us suggests the contrary.